# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO.: 11-02270 (BKT) |
| SAN JUAN BAUTISTA MEDICAL CENTER, CORP. | |
| Debtor | CHAPTER 11 |

**EMERGENCY MOTION REQUESTING AN ORDER EXTENDING THE AUTOMATIC STAY TO THE ESCUELA DE MEDICINA SAN JUAN BAUTISTA FROM ACTIONS BY PREPA UNTIL THE DEBTOR IS ABLE TO MEET WITH PREPA TO DISCUSS THE STATUS OF THE UTILITY ACCOUNT WITH PREPA AND TO IDENTIFY ACTIONS GOING FORWARD**

**COMES NOW,** San Juan Bautista Medical Center Corp., the Debtor in Possession, and the Debtor hereinafter, through the undersigned attorney, STATES and PRAYS:

*Preliminary Statement*

The Debtor, San Juan Bautista Medical Center, Corp., d.b.a. "Hospital San Juan Bautista de Caguas" and "Hospital San Juan Bautista", is a non-profit organization under the laws of Puerto Rico and under Section 501(c)(3) of the Internal Revenue Code. The Debtor operates a hospital and medical research facility under a sublease agreement with the Escuela de Medicina San Juan Bautista. The physical space managed and occupied by the Debtor were formerly occupied by the Centro Médico Regional de Caguas. The Debtor is one of the few "teaching hospitals" in Puerto Rico, with approximately 259 medical students practicing at the facilities and 1,675 students a year preforming some research task at the hospital. The hospital employs 377 people directly and provides for the employment, indirectly, of approximately an additional 1,000 people. The Debtor is governed by a Board of Directors. The Debtor's Board is composed of esteemed professionals in the health care sector including its President, Ms. Limari Colon and Dr. Yocasta Brugal. The Debtor has been

accredited by the Joint Commission on the Accreditation of Health Organizations since 2001.

The Hospital serves the private sector as well as providing services to the "medico indigentes" population in the Eastern Region of the island, including individuals from the municipalities of Caguas, Aguas Buenas, Gurabo, Juncos, San Lorenzo, Cayey, Aibonito, Cidra, Humacao, Las Piedras, Maunabo, Naguabo and Yabucoa, among others. The Debtor has 375 approved beds for hospitalization and offers a full spectrum of medical services including emergency medical treatment, surgery, neonatology, primary care, full clinical and pathology labs, and internal medicine. Currently the hospital has an average of over 85 hospitalized patients per day, treats 40 mental patients, provides treatment for 2500 monthly emergency patients and renders services to approximately 80 ambulatory patients per day.

Some of Debtor's key operations and goals are intertwined with the operations and goals of the Escuela de Medicina. The Escuela de Medicina San Juan Bautista, is also a non profit organization, governed by a Board of Trustees (*Junta de Síndicos*) and primarily composed of health professionals. The School's Board is overseen by Dr. Yocasta Brugal, a well known professional in the field. The school is accredited by the appropriate regional and national accrediting agencies and its students are eligible to receive federal student assistance.

The hospital shares the premises it leases with the Escuela de Medicina San Juan Bautista, the regional offices of the Department of Health ("DOH") and the Instituto de Estabilización Emocional del San Juan Bautista, Inc., ("IEESJB") a corporation dedicated to administering a mental health treatment facility. Collectively they are known to the public as the Hospital San Juan Bautista or Hospital Regional de Caguas.

The primary reason that has compelled the Debtor to petition for Bankruptcy has been due to

the actions and efforts of the Puerto Rico Energy and Power Authority (PREPA) to suspend or terminate electrical services to Medical Center (including Debtor, the School of Medicine, and all entities currently occupying or based in the Medical Center). All of the entities that are located in the premises receive electric power through the same account, account number 042-041432-002, which is in the name of the School of Medicine. The Debtor consumes approximately 85% of the electric power billed monthly to this account. The Debtor has historically been the entity that has provided payment to the invoices for electric power. Since 2002, the Debtor, the School of Medicine and PREPA have been involved in a state court litigation for the collection of the amounts owed to PREPA due to account number 042-041432-002, case number ECD 2002-0679 (404) before the First of Instance Court of Caguas. In this case PREPA obtained a consent judgement that it now seeks to execute. Currently the parties are trying to reconcile the claim, since the monthly invoices have been disputed by the Debtor and the School of Medicine.

The termination of electrical service to a hospital not only impedes Debtor's ability to reorganize, but it literally poses a threat to the lives and well-being of the patients currently being treated by the hospital. In addition to the very well-being of the patients themselves, any termination of electrical services would also threaten the people who work and study at the Hospital. The bankruptcy petition was Debtor's sole alternative to preserve itself as a going concern, to preserve its ability to care for its patients, and to preserve the jobs and careers of the people who work and study at the hospital.

**FACTS**

1. The Debtor is a non-profit corporation which was incorporated on October 31, 2001. It is dedicated to the administration of the health facilities commonly known as the Hospital San

3

Juan Bautista de Caguas.

2. In 2002 PREPA commenced an action against the School of Medicine in state court over the amount due for electrical services, case no.: ECD 2002-0679 (404).

3. On January 22, 2003, PREPA and the School of Medicine executed a stipulation, where the School of Medicine acknowledged a debt as of December 17, 2002 in the amount of $1,634,922.85 and the parties established a payment plan. As part of the payment plan provided, the School of Medicine also provided PREPA with a guarantee which consisted of assigning the account receivables for services provided at the hospital (which is administered by the Debtor and are generated by the operations of the Debtor) in the medical insurance plans Triple S, Cruz Azul and ACAA.

4. A consent judgement was entered on January 22, 2003, and the court approved the stipulation filed by PREPA and the School of Medicine. .

5. On May 25, 2004, PREPA filed a motion for execution of the judgement obtained. The School opposed the execution of the judgment on the grounds of the amounts claimed**.** The Debtor intervened in the state court case, since it is the main beneficiary of the services. If the services are terminated to the school, they will also be terminated to the Hospital and to the facilities of the Department of Health which share this service. Thereafter the parties have engaged in extensive litigation and reconciliation of the amount of the debt, which pursuant to PREPA is approximately over $21million. The Debtor and the School of Medicinel dispute this amount.

6. In September 2010, PREPA notified the Debtor for the first time of its intent to suspend the electric service to the hospital on October 13, 2010. The parties failed to reach an agreement

and a $400,000 deposit was made by the Hospital in the state court litigation. On that same date, the Debtor responded to PREPA and clarified that the amount claimed as owed was disputed. The Debtor further clarified that within the state court litigation, a genuine controversy had arisen regarding the liability of EACH of the entities that receive electrical service, since they all share the same account. The Debtor further advised PREPA of the operational and public health consequences that would arise if the electric power was suspended.

7. In March 2011 PREPA sent a second letter to the Hospital notifying the Hospital of PREPA's intent to suspend electric services to the common account. In its letter PREPA explicitly and unequivocally recognized that a substantial amount of the debt on the common account of is owed by the Hospital.

8. On March 18, 2011 in order to protect itself as a going concern, to ensure its continued operations and the to maintain the care of the patients of the hospital, the Debtor filed for relief pursuant to the provisions of Chapter 11 of the Bankruptcy Code. Such action invokes the automatic stay and prevents the termination of electrical services to the Hospital.

9. Nevertheless, the School of Medicine has not filed for bankruptcy, but the suspension of the services to its account due to the debt incurred by the Hospital, will severely damage its image, its accreditation and its operations as a whole.

10. Although both entities, the Debtor and the School of Medicine, are independent, and while both entities are separately registered non-profit entities under the laws of Puerto Rico and under Section 501(c)(3) of the Internal Revenue Code, the two entities enable each other to meet their respective operational purposes.

11. Where the Hospital provides residents and medical students with a place to practice and learn medicine, to perform necessary research tasks and to accomplish other actions necessary to succeed and be accredited as a Medical School, the Hospital relies on the residents and the research performed by the School's students to care for and treat its patients, to give it the quality of personnel necessary to be the leading medical services provider in the eastern region of Puerto Rico and to provide the people of the region, especially the poor, with the medical services that they need. It is this independent but inter-connected relationship that is one of the key features of this case.

## *ARGUMENT*

I.. IN ORDER FOR DEBTOR TO REALIZE THE PROTECTION OF THE AUTOMATIC STAY, THE DEBTOR REQUIRES AN EMERGENCY ORDER PREVENTING PREPA FROM TERMINATING ELECTRICAL SERVICE TO THE SAN JUAN BAUTISTA SCHOOL OF MEDICINE

12. The automatic stay is "among the most basic of debtor protections under bankruptcy." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986).

13. Indeed, the Automatic Stay " is a fundamental protection *for all parties* affected by the filing of a petition in bankruptcy." *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 977 (1st Cir. 1997)(emphasis added).

14. It is no surprise then that courts have held that Bankruptcy courts have the power and authority to stay any action that "*could conceivably have any effect*" on the administration of estate or the reorganization plan. *See In re American Hardwoods*, 885 F.2d 621, 624 (9th Cir., 1989).

14. Noting that the Automatic Stay requires attention and care, The First Circuit held that "like

a shade tree, the automatic stay which attends the initiation of bankruptcy proceedings, must be nurtured if it is to retain its vitality." *Soares,* 107 F.3d at 971.

15. Debtor's continued operations are completely dependent on the provision of electrical services. Any cessation or curtailment of electrical services will terminate the Debtor's ability to reorganize and, of more urgency, prevent Debtor's patients from receiving medical care. It is here, that the Debtor is requesting the action of this Court to ensure that the Automatic Stay protecting the Debtor's estate precludes any action by PREPA to terminate or curtail electrical service to the common account of the Debtor and the School of Medicine.

16. Therefore, the Debtor requests this Court to issue an urgent order, for *a limited period of time*, preventing PREPA from discontinuing electrical service to the common account held by both the Debtor and the School of Medicine until the Debtor and PREPA have had a reasonable opportunity to discuss the status of the common account and identify a path of action going forward.

17. Although it is generally true that the protections of the automatic stay are limited to the Debtor, a court may extend the stay against non-bankrupt parties when there are "unusual circumstances." *A.H. Robbins Co. v. Piccinin*, 788 F.2d 994, 998 (4th Cir., 1986).

18. The case law defines these "unusual circumstances" as falling into one of two categories:

    A.    when there is such identity between the debtor and third-party defendant that the debtor may be said to be the real party defendant;" and,

    B.    where the third party non-debtor "***is so essential to the debtor's efforts at reorganization*** *that the stay must apply to protect debtor's efforts to reorganize.*"

*McCartney v. Integra National Bank North*, 106 F.3d 506, 510 (3rd Cir., 1997)(emphasis added); *See also In re American Hardwoods*, 885 F.2d 621, 624 (9th Cir., 1989)(*holding* that

the bankruptcy court has the power and authority to stay any action that "could conceivably have any effect" on the administration of the estate or reorganization plan); *In re S.I. Acquisition,* 817 F.2d 1142, 1147 - 48 (5th Cir., 1987)(*holding* that an action against the founder of a debtor corporation on an alter ego theory to collect the pre-petition debts of the debtor was stayed by the Bankruptcy Code); *U.S. v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 (9th Cir., 1993)(*recognizing* the two categories of exceptions extending the automatic stay to non-debtors).

19. Here, "unusual circumstances" exist. The relationship between the School of Medicine and the Debtor is critical not only to the community at large but to the Debtor's opportunity for reorganization. Both entities ***must*** have electrical services.[1]

21. Substantial interference with the School of Medicine's operations would effectively curtail the Debtor's opportunity for reorganization.

22. Although the Debtor contends that the Automatic Stay ought to generally be extended to the School of Medicine, in this circumstance the Debtor is only requesting the extension of the stay with respect to the actions of PREPA and only for a limited time.

23. The amount of pre-petition obligations for electrical expenses is of dispute but a substantial portion of the past arrears is owed directly by the Debtor.

---

[1]The Debtor understands that under Bankruptcy Rule of Procedure 7001, any proceeding to obtain an injunction requires an Adversary Proceeding. Although courts are somewhat divided on whether the extension of the automatic stay is "a proceeding for an injunction" (*See e.g. In re MJH Leasing, Inc.,* 328 B.R. 363, 368 (Bankr. Mass. 2005)(*noting* that a motion to extend the automatic stay may be brought as a contested matter), due to the emergency nature of the request and to the actual emergencies that would arise if Debtor were forced to cease operations due to a lack of electrical services, the Debtor is making this motion for an extension of the stay for a limited period of time to allow PREPA and the Debtor to meet and discuss the issues in good faith.

24. Accordingly, the School of Medicine is independently liable to PREPA for only a relatively small portion of the arrears.

25. In *A.H. Robbins Co. v. Piccinin*, 788 F.2d 994, 998-99 (4th Cir., 1986), the Court held that situations where "the relationship between a debtor and non-debtor are so bound by statute or contract that the liability of the non-debtor is imputed to the debtor . . . [T]hen [in such situations] the Congressional intent to provide relief to debtors would be frustrated by permitting indirectly [a suit against a non-debtor] what is expressly prohibited in the Code." *A.H. Robbins* 788 F.2d at 999.

25. Here, the operations between the Debtor and the School of Medicine are so inextricably bound to one another that an action against the School of Medicine will necessarily have an impact on the Debtor.

26. In the case of PREPA in particular, if PREPA were to follow through in its threat to terminate electrical service to the School of Medicine, Account # 042-041432-002, the Debtor would not only lose its electrical service, but PREPA would in essence be acting to collect a pre-petition obligation of the Debtor and PREPA would be achieving indirectly what Congress has forbid it to do directly.

27. The Debtor in this instance is only requesting that the automatic stay that protects its operations and its ability to reorganize "be nurtured" so that PREPA cannot, by terminating electrical service to the School of Medicine, by extension terminate electrical service to the Debtor.

28. Further, Debtor is only requesting that such an order be issued for a limited period of time to enable PREPA and the Debtor to meet in an effort to try resolve these issues as efficiently as

9

practicable.

*Conclusion*

The Debtor and the School of Medicine are independent entities but with respect to some crucial aspects of their operations, they are dependent on one another. Further, the pre-petition obligation for electrical services are an obligation of both the School of Medicine and the Debtor. Nevertheless, both the Debtor and the School of Medicine are served by one account. Should PREPA terminate this account, PREPA shall be terminating electrical service to the Debtor for non-payment of a pre-petition debt. No matter that part of this debt is owed by the School of Medicine, the account cannot be canceled without Debtor suffering irreparable harm to its ability to reorganize. Accordingly, the Debtor requests that this Court extend the coverage of the automatic stay to the School of Medicine for only the limited duration of allowing the Debtor to meet with PREPA to discuss the status of the common electrical account and to identify a path going forward that is acceptable to the parties without the Debtor suffering a termination of electrical services.

## CERTIFICATION OF EMERGENCY MOTION BY COUNSEL PURSUANT TO LOCAL RULE 9013-1

1. I, Carmen Conde, have carefully examined the matter and believe that there is a true need for emergency relief;
2. This emergency has not been due to any lack of diligence on the part of the Debtor;
3. I have contacted counsel for PREPA, Ivan Castro, regarding this matter.

**Respectfully Submitted**,

In San Juan, Puerto Rico, this 21st day of March 2011.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties appearing in said system, as listed below, including the U.S. Trustee and counsel for PREPA, Ivan Castro.

> **C. CONDE & ASSOC.**
> *S/ Carmen Conde Torres*
> Carmen Conde Torres, Esq.
> USDC 207312
> 254 San José Street, 5th Floor
> Old San Juan, Puerto Rico 00901
> Telephone: 787-729-2900
> Facsimile: 787-729-2203
> E-Mail: *condecarmen@microjuris.com*

IVAN M CASTRO ORTIZ    icastro@alblegal.net

MONSITA LECAROZ ARRIBAS    ustpregion21.hr.ecf@usdoj.gov

### NOTICE

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or

(iii) in the opinion of the Court, the interest of justice requires otherwise. If a timely response to the application is filed, the Court may – in its discretion – schedule a hearing.